Joyce VAN PILSUM, Plaintiff,

v.

IOWA STATE UNIVERSITY OF SCIENCE AND TECHNOLOGY; Barbara Mack, Individually and in her official capacity; Martin C. Jischke, Individually and in his official capacity; Iowa State Board of Regents; State of Iowa; Frank Brown, individually and in his official capacity, Defendants.

Civ. No. 4–92–70619.

United States District Court,
S.D. Iowa,
Central Division.

Sept. 12, 1994.

---

936

John C. Barrett, John O. Haraldson, West Des Moines, IA, for plaintiff.

Steven K. Young, Asst. Atty. Gen. of Iowa, Des Moines, IA, for defendants.

## MEMORANDUM OPINION, AND OR-DERS DISMISSING CLAIMS BARRED BY THE ELEVENTH AMENDMENT

VIETOR, District Judge.

Plaintiff Joyce Van Pilsum brings suit against defendants Iowa State University of Science and Technology (I.S.U.); the State of Iowa; the Iowa State Board of Regents; and Barbara Mack, Martin C. Jischke, and Frank Brown, all officials at I.S.U. After this court's ruling on defendants' motion for summary judgment, plaintiff has two remaining claims: (1) an age discrimination claim brought under both the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Iowa Code 601A (now Chapter 216); and (2) a 42 U.S.C. § 1983 claim for violation of the Fourteenth Amendment of the United States Constitution.

■ This court, as a court of limited jurisdiction, has a duty to assure itself that it has subject matter jurisdiction in each case. *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987); *see also Dale v. Weller*, 956 F.2d 813 (8th Cir.1992). Specifically, "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1983). The court earlier ordered the parties to brief the issue of the applicability of the Eleventh Amendment to plaintiff's claims. The briefs have been filed and supplemented, and oral arguments have been heard.

### Discussion

■ Before examining plaintiff's claims individually, the court must first decide whether defendants Iowa State Board of Regents and I.S.U. share in the State of Iowa's Eleventh Amendment immunity. The overwhelming majority of courts that have considered the question of whether state universities share in their respective state's Eleventh Amendment immunity have found that they do. *See Sherman v. Curators of Univ. of Mo.*, 16 F.3d 860, 863 n. 3 (8th Cir.1994) (citing cases). The court must examine the particular circumstances of each entity, however, to determine whether the suit is in reality against an "arm or alter ego of the state." *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir.1985); *Sherman*, 16 F.3d at 863. " 'Courts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury.' " *Sher-*

*man,* 16 F.3d at 863 (quoting *Greenwood,* 778 F.2d at 453). The *Sherman* court approved of the nine factors identified in *Kovats v. Rutgers, The State Univ.,* 822 F.2d 1303, 1309 (3d Cir.1987) for use in evaluating an entity's status under the Eleventh Amendment:

> (1) local law and decisions defining the status and nature of the agency involved in its relation to the sovereign; (2) most importantly, whether the payment of the judgment will have to be made out of the state treasury; (3) whether the agency has the funds or the power to satisfy the judgment; (4) whether the agency is performing a governmental or proprietary function; (5) whether it has been separately incorporated; (6) the degree of autonomy over its operations; (7) whether it has the power to sue and be sued and to enter into contracts; (8) whether its property is immune from state taxation; and (9) whether the sovereign has immunized itself from responsibility for the agency's operations.

*Sherman,* 16 F.3d at 865 n. 6.

### Availability of Non-state Funds

Plaintiff relies heavily on the fact that less than forty percent of I.S.U.'s annual operating budget originates directly from state appropriations.[1] According to plaintiff, these budget figures demonstrate that I.S.U. has ample non-state funds with which to pay any judgment in this case. The fact that I.S.U. generates a substantial amount of income from such things as athletic events, bookstores, and residence halls, and receives money from grants and donations, however, is not dispositive. All state-supported universities generate income from similar sources and yet, in the vast majority of reported appellate decisions, they have been found to share in their respective state's Eleventh Amendment immunity.[2]

A similar argument was made in *Kashani v. Purdue Univ.,* 813 F.2d 843 (7th Cir.1987). For the 1982–83 academic year, Purdue University received 36% of its income from state appropriations. After reviewing the budgeting scheme established under Indiana law, and considering Purdue University's inability to levy taxes and tax-exempt status under Indiana law, the court found that Purdue's financial basis was "dependent upon and functionally integrated with the state treasury" to an extent that any payment by Purdue would directly affect the state treasury. *Id.* at 846. After discussing Purdue's lack of autonomy from the State of Indiana, the court concluded that Purdue was entitled to Eleventh Amendment immunity. *Id.* at 848. *See also Lewis v. Midwestern State Univ.,* 837 F.2d 197, 199 (5th Cir.1988) ("'[C]rucial question * * * is whether use of these unappropriated funds to pay a damage award * * * would interfere with the fiscal autonomy and political sovereignty of Texas.'") (quoting *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 560 (5th Cir.1982)); *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 304–05 (6th Cir.1984) (appropriated revenues were linked to non-appropriated revenues so that any judgment against the university would have to be covered by an increase in state appropriations).

After reviewing the extensive legislative and executive control over I.S.U.'s finances, I

---

1. For the 1992–93 fiscal year, the breakdown of I.S.U.'s budget is as follows:
   A) 37.5% from direct appropriations from the state;
   B) 13.1% from tuition;
   C) 20.7% from federal appropriations, grants, and contracts;
   D) 2.0% from reimbursed indirect costs;
   E) 1.6% from sales and services;
   F) 25.0% from donated funds, endowment income, and auxiliary activities (residence halls, athletic events, university bookstore, etc.).

2. An exception is *Kovats v. Rutgers, The State Univ.,* 822 F.2d 1303 (3d Cir.1987) (holding Rutgers not entitled to Eleventh Amendment immunity). As the *Kovats* court points out, Rutgers

University is unique in many respects, stemming in large part from the fact that Rutgers was originally a private university governed solely by a private board of trustees. While it was incorporated as a public university in 1956, Rutgers has a dual governing structure whereby the original trustees, by statute, hold a majority of seats on one of the two governing bodies, and retain sole control over, subject to a public trust, all assets held by Rutgers prior to 1956. *Id.* at 1310–11. *Cf. University of Rhode Island v. A.W. Chesterton Co.,* 2 F.3d 1200 (1st Cir.1993) (University of Rhode Island a "citizen" of Rhode Island for purposes of diversity jurisdiction and not an arm of the state).

find and conclude that any judgment against I.S.U. would likewise interfere with the fiscal autonomy of the State of Iowa. I.S.U. is governed by the State Board of Regents ("Board"). Iowa Code § 262.7. The Board is made up of nine members who are appointed by the governor, subject to confirmation by the senate, for six-year terms, and Board members may be removed by the governor, with approval of the senate, for malfeasance in office. Iowa Code §§ 262.2, 262.4. Expenses of the Board and Board employees are paid by the State of Iowa. Iowa Code § 262.29. The number and location of Board meetings is controlled by state law. Iowa Code §§ 262.8, 262.9(18). The Board is responsible for hiring the president and other executive officers of I.S.U. Iowa Code § 262.9(2). The Board directs the expenditure of all state appropriations made to I.S.U., "and any other moneys belonging thereto * * *." Iowa Code § 262.9(8). The Board may purchase and sell real estate belonging to I.S.U. only with the approval of the executive council, which consists of the governor, secretary of state, auditor of state, treasurer of state, and secretary of agriculture. Iowa Code § 262.9(6).

The legislature and executive carefully review I.S.U.'s finances in determining the amount of its appropriations. I.S.U. is required by law to provide an office for a state budget analyst who acts as a liaison between I.S.U. and the state department of management in preparation and execution of the budget. Iowa Code § 8.29.

> All financial and statistical data and information prepared or accumulated by the budget analysts shall be made available to the governor and the general assembly for their needs in budgeting and appropriation legislation.

*Id.* I.S.U. is required to report the receipt of all federal funds and other non-appropriated funds that supplement or replace state appropriations. Iowa Code § 8.44. The state auditor is required to audit I.S.U.'s books at least quarterly, and is required to review the investment practices of the Board. Iowa Code § 11.2. Under Iowa Code § 262.26, the Board is required to

> report to the governor and the legislature such facts, observations, and conclusions respecting [I.S.U.] as in the judgment of the board should be considered by the legislature. Such report shall contain an itemized account of the receipts and expenditures of the board, and also the reports made to the board by the executive officers of the several institutions or a summary thereof, and shall submit budgets for biennial appropriations deemed necessary and proper to be made for the support of the several institutions * * *.

I.S.U. is required to file a monthly abstract of all receipts and disbursements with the state director of revenue and finance. Iowa Code § 421.31(6)(d). Any judgment in this case would thus have to be reported to the State of Iowa.

While I.S.U. receives income from sources other than the State of Iowa, direct appropriations from the state and state-authorized tuition is by far the largest segment of the budget. The following passage from *Purdue Univ.* aptly describes I.S.U.'s situation:

> If a judgment were awarded against Purdue, the state treasury would not write out a check to Kashani. But in view of the fact that Purdue is by design dependent on state appropriations, which are evidently carefully geared through close oversight to meet the changing financial needs of the university, it is apparent that the payment would directly affect the state treasury. Indiana has not created an entity with a separate financial basis; it has created one that is dependent upon and functionally integrated with the state treasury.

*Purdue Univ.*, 813 F.2d at 846.[3] Any judgment in this case would be paid directly out

---

3. Furthermore, as both parties agree, the State of Iowa has a duty to defend and indemnify I.S.U. employees from judgments obtained against them for actions taken within the scope of their employment, with some exceptions. Iowa Code § 669.21 provides:

> The state shall defend any employee, and shall indemnify and hold harmless an employee against any claim as defined in section 669.2, subsection 3, paragraph "b", including claims arising under the Constitution, statutes or rules of the United States or of any state. The duty to indemnify and hold harmless shall

of the state treasury, or would directly affect the state treasury and the sovereignty of Iowa by influencing state appropriation and budgeting decisions.[4]

### Other *Sherman* Factors

To the extent they are relevant, the remaining factors identified in *Sherman* also point to I.S.U. and the Board sharing in Iowa's Eleventh Amendment immunity. I.S.U. is a land grant university. In accepting the federal grant, the State of Iowa "assumes the duties, obligations, and responsibilities" imposed by all acts of Congress relating to the grant. Iowa Code § 266.1. Under Iowa case law, I.S.U. is entitled to sovereign immunity for suits brought in state court, and its actions are considered "agency action" under the Iowa Administrative Procedure Act, Iowa Code chapter 17A (IAPA). *See Genetzky v. Iowa State Univ.,* 480 N.W.2d 858, 860–61 (Iowa 1992) (sovereign immunity); *Sindlinger v. Iowa State Bd. of Regents,* 503 N.W.2d 387 (Iowa 1993) (applying the IAPA to Board of Regents and regents institution); *Allegre v. Iowa State Bd. of Regents,* 349 N.W.2d 112, 113 (Iowa 1984). In *Allegre v. Iowa State Bd. of Regents,* 349 N.W.2d 112, 113 (Iowa 1984), the Iowa Supreme Court states:

> The Iowa State Board of Regents (Board) is a state agency under Iowa Code chapter 262. The Board oversees the University of Northern Iowa (UNI) and its employees are those of the Board for the purposes of this case.

Iowa Code § 266.5, which authorizes the Board to organize an extension service at I.S.U., is captioned "State Agency." Providing education is clearly a governmental function. *See State v. Trucke,* 410 N.W.2d 242, 244–45 (Iowa 1987) ("education is 'perhaps the most important function of state and local government.'") (quoting *Brown v. Board of Educ. of Topeka, Kan.,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954)). I.S.U. is not separately incorporated. I.S.U.'s real estate is held in the name of the State of Iowa, *see* Iowa Code §§ 262A.4, 262.37, 262.46, and is not subject to state taxation. *See* Iowa Code § 427.1.

The State of Iowa exercises a significant amount of influence over the operations of the Board and I.S.U. As discussed above, all Board members are appointed by the governor and confirmed by the Senate for six-year terms. The Board in turn selects the executive officers of I.S.U. and acts as the governing body of I.S.U. This power to appoint the members of the Board greatly diminishes the independence of both the Board and the executive officers of I.S.U., as does I.S.U.'s dependency on state appropriations. Perhaps most importantly, the powers and duties of the Board are expressly enumerated in Iowa Code § 262.9, which, of course, can be amended or repealed at any time.

After weighing all the factors identified in *Sherman,* I conclude that the Board and I.S.U. share in the State of Iowa's Eleventh Amendment immunity.

### Applying the Eleventh Amendment

[3–5] It is well established that, absent a waiver, a suit against a State or one of its agencies or departments brought in federal court is proscribed by the Eleventh Amend-

---

not apply and the state shall be entitled to restitution from an employee if, in an action commenced by the state against the employee, it is determined that the conduct of the employee upon which a tort claim or demand was based constituted a willful and wanton act or malfeasance in office.

*See also* Iowa Code § 669.22 (42 U.S.C. § 1983 actions brought in federal court). (While defendants argue, and plaintiff apparently agrees, that the definition of "employee" in section 669.2(4) includes "any state agency," it is clear to the court that the definition covers only *employees* of state agencies.)

Plaintiff's first claim is brought against I.S.U. and its employees "jointly and severally." As a practical matter, therefore, indemnification of

an I.S.U. employee will constitute an indemnification of I.S.U.

4. Even assuming a judgment in this case would have *no* effect on the state treasury, the inquiry would not end here. The *Kovats* court emphasized that "[t]he issue of whether payment is made from the state treasury * * * although important, is not dispositive. * * * If the state structures an entity in such a way that the other relevant criteria indicate it to be an arm of the state, then immunity may be retained even where damage awards are funded by the state at the state's discretion." *Kovats,* 822 F.2d at 1310 (citation omitted). The court ultimately found that "the *majority* of the relevant criteria weigh against considering Rutgers an arm of the state * * *." *Id.* at 1312 (emphasis added).

ment regardless of the nature of the relief sought.[5] *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Plaintiff's claims under Iowa Code chapter 216 and 42 U.S.C. § 1983 against defendants State of Iowa, the Iowa State Board of Regents and I.S.U. are therefore barred by the Eleventh Amendment and will be dismissed. *See Pennhurst,* 465 U.S. at 121, 104 S.Ct. at 919 (applying Eleventh Amendment to state-law claims brought in federal court); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (section 1983 does not override the Eleventh Amendment); *cf. Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (neither states, nor state agencies, nor state officials acting in their official capacities are "persons" under section 1983). Defendants Mack, Jischke, and Brown are sued in both their individual and official capacities. Suits brought against state officials in their *official* capacities seeking damages are treated as being no different than a suit against the State itself. *Will,* 491 U.S. at 71, 109 S.Ct. at 2312. But official-capacity actions seeking prospective, injunctive relief are not treated as actions against the State for purposes of the Eleventh Amendment. *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10; *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 909. Therefore, plaintiff's claims under Iowa Code chapter 216 and 42 U.S.C. § 1983 against defendants Mack, Jischke, and Brown, in so far as it is brought against them in their official capacities, will be limited to requests for prospective, injunctive relief.

### Orders

IT IS ORDERED that plaintiff's claims under Iowa Code chapter 216 and 42 U.S.C. § 1983 against defendants State of Iowa, Iowa State Board of Regents, and I.S.U. are DISMISSED.

IT IS FURTHER ORDERED that to the extent plaintiff's claims under Iowa Code chapter 216 and 42 U.S.C. § 1983 are brought against defendants Mack, Jischke, and Brown in their official capacities, plaintiff is limited to seeking prospective, injunctive relief.

---

**5.** Congress can abrogate a state's Eleventh Amendment immunity under its section 5 power to enforce the Fourteenth Amendment if it makes its intention "unmistakably clear." *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). The vast majority of courts that have considered the question have concluded that Congress has abrogated the Eleventh Amendment immunity of the states in passing the ADEA. *See, e.g., Davidson v. Board of Governors of State Colleges &* *Univs. for W. Illinois Univ.,* 920 F.2d 441, 443 (7th Cir.1990); *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 700 (1st Cir.1983); *Hurd v. Pittsburg State Univ.,* 821 F.Supp. 1410, 1412–13 (D.Kan.1993) (citing cases). *But see Black v. Goodman,* 736 F.Supp. 1042, 1045 (D.Mont. 1990). I agree with the weight of authority and adopt their reasoning. The Eleventh Amendment does not bar plaintiff's claims brought under the ADEA.