Charles D. SHERMAN, Plaintiff,

v.

The CURATORS OF the UNIVERSITY OF MISSOURI, Defendant.

No. 93–4199–CV–C–5.

United States District Court,
W.D. Missouri,
Central Division.

Dec. 9, 1994.

---

Loramel Shurtleff, Ronald Bunn, Shurtleff, Froeschner, Bunn & Aulgur, Columbia, MO, for plaintiff.

Jeffrey H. Blaylock, Knight, Ford, Wright, Atwill, Parshall & Baker, Columbia, MO, for defendant.

## *ORDER*

SCOTT O. WRIGHT, Senior District Judge.

Before the Court is defendant's Motion for Summary Judgment. Plaintiff's Complaint seeks damages on breach of contract and promissory estoppel theories. Defendant moves this Court to enter judgment in its favor based on Eleventh Amendment immunity.

Defendant previously moved to dismiss this action based on Eleventh Amendment immunity. This Court granted defendant's motion and plaintiff appealed to the Eighth Circuit. The Eighth Circuit reversed and remanded for factual findings on the issue of defendant's immunity 16 F.3d 860. For the reasons set forth below, this Court again holds that the Eleventh Amendment bars this suit against the defendant. Defendant's motion will be granted.

## I. Background

In 1889, the Missouri General Assembly established the University of Missouri ("University"). L.1989, p. 261 (current version at Mo.Rev.Stat. § 172.101 (1939)). The constitution of the State of Missouri charges the Missouri General Assembly with the responsibility of adequately maintaining the University. Constitution of Missouri, art. IX, § 9(b). The constitution also provides that the government of the University "shall be vested in a board of curators consisting of nine members appointed by the governor, by and with the advice and consent of the senate." Constitution of Missouri, art. IX, § 9(a). The board of curators ("Curators") has the power to appoint and remove the president, deans, professors and other employees of the University. Mo.Rev.Stat. § 172.300 (1955).

The Curators are required, at the close of each University year, to "make a report to the governor in detail, exhibiting the progress, conditions and wants of the several colleges or departments of instruction in the university, the course of study in each and the number and names of the officers and students." Mo.Rev.Stat. § 172.220 (1949). The Governor is then required to "cause the report printed for the use of the general assembly and the people of the state." *Id.*

The Curators are also required to furnish the General Assembly, before each of its regular sessions, with "a report containing a classified statement of the receipts and disbursements of the institution during the preceding biennial period." Mo.Rev.Stat. § 172.210 (1939). The report must also show the "amounts annually paid to the president, the professors and other teachers, officers, and employees of the university." *Id.* Missouri law also provides that the University cannot charge residents of the State of Missouri tuition. Mo.Rev.Stat. § 172.360 (1939).

Funds for the operation of the University are derived from several sources. The principal sources are: funds requested from and appropriated by the Missouri General Assembly; student fees; profits from the University Hospital and Clinics; profits from auxiliary enterprises and educational activities; government grants and contracts; and

private gifts, grants and contracts. In the 1993–1994 fiscal year, these revenue sources accounted for the following percentages of the University's total revenues:

State appropriated funds: 31.3%

Student fees: 18.5%

University Hospital and Clinics: 16.6%

Government grants and contracts: 7.7%

Auxiliary enterprises: 7.3%

Educational activities: 7.3%

Private gifts, grants and contracts: 4.8%

All funds received by the University are deposited in bank accounts established and held by the Curators. There is a single set of bank accounts for all four campuses of the University.[1] All University revenue, regardless of its origin, is commingled in these expenditure accounts. Because all University funds are commingled, the Curators do not specifically pay any expenses out of either the state appropriations or student fees.

## II. Discussion

The Eleventh Amendment prohibits private parties from suing a state in federal court.[2] Eleventh Amendment immunity extends to instrumentalities of the state acting as an "arm of the State." *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

"Each state university must be considered on the basis of its own particular circumstances in determining if the university is a state instrumentality that enjoys the protection of the eleventh amendment." *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir.1985) (citation omitted). The Eighth Circuit has identified two "critical" factors to be examined in making this determination. *Sherman v. Curators of the Univ. of Missouri*, 16 F.3d 860, 864 (8th Cir.1994). Those factors are the University's level of autonomy and, most importantly, whether any judgment rendered against the defendant will be paid by state funds. *Sherman*, 16 F.3d at 863; *Greenwood*, 778 F.2d at 453.

### A. Autonomy

The state legislature created the University of Missouri and continues to subject it to detailed reporting requirements. Before each of the legislature's regular sessions, the University is required to provide it with classified reports of the receipts and disbursements of the University. The report must also set forth the salaries of the president, the professors and other teachers, officers, and employees of the University. The University is also required to provide the Governor with a yearly report detailing the progress, conditions and wants of the various colleges and departments in the University. This report must also contain the course of study in each of the colleges and departments and the number and names of the officers and students in each.

It is also significant that the state supplies a large percentage of the University's operating budget through state-appropriated funds. This, balanced against the fact that state law prohibits the University from charging residents of the state tuition, demonstrates that the University is not at all financially independent from the state. Rather, it is apparent that at least financially, the University is quite dependent upon the state.

Possibly the most important consideration in evaluating the University's level of autonomy is the Governor's power to appoint the Curators. Obviously, the ability to select the University's governing body provides the executive branch of the State with a great deal of power and control over the University.

In view of the state's continuous oversight of the University's status and affairs, the University's dependence upon state funding, and the fact that the University's governing body is chosen by the Governor, it is apparent that the University does not enjoy a significant level of autonomy from the state.

1. The University of Missouri has campuses at Columbia, Kansas City, St. Louis and Rolla.

2. The language of the Eleventh Amendment only prohibits suits against a state by citizens of another state. However, the Supreme Court has held that a state is immune from suits brought in federal court by its own citizens as well as citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

## B. State Funds

The primary issue before this Court on remand is "whether a judgment against the University can be paid from non-state funds under the University's discretionary control." *Sherman,* 16 F.3d at 864–65. Plaintiff contends the University has sufficient non-state funds under its control to pay any judgment rendered against it. The University argues that, because all revenues are commingled, it could not pay a judgment that did not include state-appropriated funds.

On appeal, the Eighth Circuit offered some instruction on this point. The court explained that the University cannot create its own Eleventh Amendment immunity by simply choosing to pay judgments out of state funds under its control. *Id.* at 864. Plaintiff contends the University's argument concerning the commingling of funds is nothing more than the University's choice to pay judgments, a least partially, from state funds. This Court does not agree.

There is no indication that the commingling of funds stems from a choice made by the University for the purpose of protecting itself with the state's Eleventh Amendment immunity. Rather, the commingling appears to represent the degree to which the state and its funds are intertwined with the University and its financial operations.

The University has established that all of its revenues are commingled in expenditure accounts. It is apparent that, under its present accounting and banking system, the University could not distinguish between a state dollar and a non-state dollar in its coffers. Thus, in answer to the Eighth Circuit's question on remand, this Court finds that a judgment against the University could not be paid from non-state funds under the University's discretionary control.

More important than the University's inability to trace funds currently under its control to a state or non-state origin is the underlying issue: Would a judgment against the University ultimately come from the state treasury? *See Edelman v. Jordan,* 415 U.S. 651, 665, 94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662 (1974) ("The funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself"); *Kashani v. Purdue Univ.,* 813 F.2d 843, 845 (7th Cir.) (the crucial question regarding Eleventh Amendment immunity is whether a judgment against the defendant would have an impact on the state treasury), *cert. denied* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 305 (6th Cir. 1984) ("[E]ven though the school might have the *power* to satisfy a judgment won[,] such judgment would inevitably have to be paid from state funds.... Creating any distinction between [the school's] appropriated and self-generated revenues in the context of Eleventh Amendment immunity would be a pure exercise in elevating form over substance."), *cert. denied* 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985).

As discussed above, Missouri law requires the University to report its financial status and needs to the Governor each year, who in turn furnishes the report to the state legislature. The University is also required to provide the legislature with detailed financial statements before each of its regular sessions. The state Constitution requires the legislature to "adequately maintain" the University and the state does in fact provide a large percentage of the University's operating budget. Considering this relationship between the University and the state, it is quite clear that any judgment against the University would ultimately come from the state's treasury.

Under very similar facts, the Seventh Circuit held that Purdue University was protected by Indiana's Eleventh Amendment immunity. In *Kashani v. Purdue Univ.,* 813 F.2d 843, 845 (7th Cir.1987), the court explained the practical effect of a judgment under such circumstances:

> If a judgment were awarded against Purdue, the state treasury would not write out a check to Kashani. But in view of the fact that Purdue is by design dependent on state appropriations, which are evidently carefully geared through close oversight to meet the changing financial needs of the

university, it is apparent that the payment would directly affect the state treasury.

*Kashani,* 813 F.2d at 846.

The same result was reached, again under very similar facts, in *Van Pilsum v. Iowa State Univ.,* 863 F.Supp. 935 (S.D.Iowa 1994). *Van Pilsum* was decided after the Eighth Circuit's decision in *Sherman.* In *Van Pilsum,* as here, plaintiff argued that the university could easily pay a judgment with non-state funds because less than forty percent of the university's budget came from state appropriations. The court rejected plaintiff's argument, finding that any judgment in the case would be paid directly out the state treasury, or would directly affect the state treasury by influencing state appropriation and budgeting decisions.

This Court finds that, regardless of the specific accounting procedures utilized by the University, any judgment against it would ultimately be derived from the state treasury.

### III.   Conclusion

After considering the University's level of autonomy and whether a judgment rendered against the University would be paid by state funds, this Court finds that the University is entitled to Eleventh Amendment immunity. Defendant's Motion for Summary Judgment will be granted.

It is hereby

ORDERED that defendant's Motion for Summary Judgment is granted.