Albert BURNHAM, Ronald Marchese,
Michael Kohn and Louise Kohn,
Plaintiffs,

v.

Lawrence IANNI, as Chancellor of the
University of Minnesota at Duluth and
in his individual capacity, Defendants.

Civ. No. 5–94–6.

United States District Court,
D. Minnesota,
Third Division.

March 17, 1995.

Faegre & Benson, P.L.L.P., John H. Hinderaker and Scott W. Johnson, Minneapolis, MN and Michael S. Husby, Duluth, MN, appeared for and on behalf of Plaintiffs.

Mark B. Rothenburg, General Counsel, University of Minnesota and Julie A. Sweitzer, Minneapolis, MN, appeared for and on behalf of Defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

### *INTRODUCTION*

Plaintiffs commenced this action for injunctive relief and damages against defendant University of Minnesota alleging violations of rights arising under the First Amendment to the United States Constitution and Art. 1, § 3 of the constitution of the

State of Minnesota. The matter grows out of a decision by defendant to remove certain photographs, on or about May 5, 1992, from a display case located in the History Department of the University.

This matter came on before the Honorable Michael J. Davis on July 20, 1994 and January 11, 1995 on the motions of defendant to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 56. For the reasons set out below, the court grants, in part, and denies, in part, the motion of July 20, 1994 and denies the motion of January 11, 1995.

## I. BACKGROUND

### A. The Milieu

This is a case concerning the interplay of academic freedoms, history and perceived threats to personal security. The facts of the matter are not seriously disputed by the parties; the gravamen of this lawsuit concerns the propriety of the actions taken in response to the alleged threats to a faculty member's personal safety.

In June 1991, Sandra Featherman was appointed to the post of vice chancellor for the University of Minnesota at Duluth ("University"). Shortly after her appointment was announced, Featherman began receiving threats. The threats were bizarre, graphic and frightening:

The dogs are howling, they want blood. There are footsteps crunching on the forest floor—it's the deer hunters coming. They're after blood, too. It's the same dream over and over. The deer hunters stalking—getting closer and closer, never giving up the hunt, never putting down their rifles. Overwhelmed by their desire to kill.

\* \* \* \* \* \*

Federman (sic) no Duluth stay away, we will kidnap you, the FBI can't protect you. The deer hunters.

At the same time that Featherman was being threatened, forged memoranda bearing defendant's name, were circulated in and about the campus. The memoranda referred to an alleged plot to kidnap Featherman and

used the terms "Prince of Death" and "Deer Hunters". The forged document was circulated through the mail to various departments and left in hallways of various campus buildings.

Beginning in March 1992, history Professor Judith Trolander became the target of threats. The caption on the flyers left in the hallways of various University buildings was: "The Imperial Council of Deer Hunters Proclaim Open Season on Judy Trolander Lesbian Feminist Bitch." The memorandum purported to reveal Professor Trolander's home address, addressed questions concerning the appropriate weapons and provided the reader with potential locations from which to carry out an attack. Finally, the flyer proclaimed: "Get cracking you kill crazy buckaroos. Its [sic] OK to kill her, the Imperial Council rules UMD, the Commission on Women is dissolved." The flyer specifically addressed Professor Trolander, but its threat was targeted to all faculty members who cooperated with Vice Chancellor Ianni's efforts to develop a diversity program: "[a]ll faculty would be sentenced to death along with their pets, children and spouses."

Defendant undertook to calm the concerns of the faculty regarding these incidents. Despite his distribution of a memoranda in which he addressed the seriousness with which he was taking the threats and in which he reiterated his commitment to the diversity program, the fears of many in the campus community were not alleviated. The investigation of the origin of the threats continued and the threats continued to hang over the campus. It is this background against which the substance of this litigation arose.

### B. The History Department Display

During the 1991 fall quarter, two members of the University History Club, plaintiffs Kohn, approached several members of the History Department faculty, including plaintiffs Burnham and Marchese, with an idea to publicize the varied interests of the Department's faculty, while at the same time portraying the faculty in a humorous and informal fashion.[1] The Kohns proposed that the

---

1. Plaintiff Marchese is a tenured professor in the University system. He is a Professor of Humani-

professors pose, with a prop representing their historical interests, for a photograph. The professors also agreed to provide background information on their academic background, historical heroes and to supply a quotation to be used along with the photographs.

Professor Marchese posed with a Roman short sword and wore a cardboard laurel wreath. He listed his specialties as ancient Greece and Rome, and Homeric literature and identified Alexander the Great as his historical hero. Marchese chose the Roman sword as his prop because of his opinion that an understanding of the military aspects of the ancient world is necessary to a complete understanding of those societies.

Professor Burnham has a special interest and expertise in American military history. He chose to pose wearing a "coonskin" cap and holding a .45 caliber pistol to reflect his interests in both military history and his historical heroes, John Adams and Davy Crockett.

Eleven faculty members contributed pictures and other information to the Kohns, who then assembled the material for display. The display was placed in a case located in a corridor outside the History Department's classrooms. It was intended to advertise the breadth and interests of the faculty and, perhaps, to attract new interest in the department.

The display went up on or about March 27, 1992.

## C. Defendant's Challenged Actions

Around April 10, 1992, Judith Karon, director of personnel and affirmative action officer for the University, received several complaints about the History Department display because it contained the photographs of Marchese and Burnham holding weapons; Burnham's use of the handgun apparently drew particular opprobrium. Karon contacted the University police and she and one Captain Michalicek visited the display. They

were told that the display had been prepared by history students and had only been posted for a few weeks. Karon asked whether the photographs could be removed.

Subsequent to the visit, Karon received several anonymous calls concerning the display. In addition, Karon received a call from Professor Trolander, who was extremely upset about the display.

Karon then sent a letter to the dean of the College of Liberal Arts, John Red Horse asking that he order the photographs removed. Dean Red Horse did not act on the request. On April 30, 1992, Karon advised Burnham by memorandum that she believed the photographs to be inappropriate given the threats received during the course of the year.

During this time period, there were several meetings between Chancellor Ianni, Karon, the History Department faculty and/or the plaintiffs here. The faculty did not agree to remove the photographs. During the course of the meetings the desire to remove the photographs was attributed to, variously, the death threats, sexual harassment and the offense which Professor Trolander had taken from the photographs.

On May 4, 1992, Chancellor Ianni directed the University Plant Services Director and Captain Michalicek to remove the photographs. On May 5, Captain Michalicek obtained the key to the display case, opened it and removed the two offending photographs from the eleven or twelve in the display. Before the display could be replaced, plaintiff Burnham removed the remaining photos and the display was terminated. The photographs were apparently turned over to Karon, who locked them away. They were later returned to plaintiffs Kohn.

Finally, the Kohn plaintiffs have received their respective degrees, graduating from the University in August 1992.

ties and Classics and History in the Department of Interdisciplinary Programs at the University with expertise in, among other things, Greek and Roman history. Plaintiff Burnham is a part-time

member of the History Department at the University with expertise in 19th and 20th century military history.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of establishing the non-existence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552; *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir.1988). Once it meets that burden, the non-moving party may not then "rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If, based upon the evidence, a reasonable jury could not return a verdict for the non-moving party, summary judgment is appropriate. *Id.* at 248, 106 S.Ct. at 2510. Summary judgment is an appropriate tool to dispose of claims which are based on undisputed facts and unsupported by the law. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–54; *Hegg v. United States*, 817 F.2d 1328, 1331 (8th Cir.1987).

### B. Defendant's Technical and Procedural Defenses

#### 1. Failure to State a Claim Under Section 1983

Defendant first asserts that plaintiff's Section 1983 action cannot be maintained against the University or against Chancellor Ianni for monetary damages because they are not persons within the meaning of Section 1983.

*Will v. Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) establishes that "neither a State nor its officials acting in their official capacities are persons under § 1983." However, "a state official in his ... 'official capacity,'

when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10, quoting *Kentucky v. Graham*, 473 U.S. 159, 164 n. 14, 105 S.Ct. 3099, 3104 n. 14, 87 L.Ed.2d 114 (1985).

*Will* further established that governmental agencies that are part of the State for Eleventh Amendment purposes are protected from suits under Section 1983. *Id.* at 66–67, 109 S.Ct. at 2309–11. The University is a state instrumentality for Eleventh Amendment purposes. *Schuler v. University of Minnesota*, 788 F.2d 510, 516 (8th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987); *but see, Sherman v. Curators of University of Missouri*, 16 F.3d 860, 863 (8th Cir.1994) (remanding issue for findings concerning whether defendant University shared in State's Eleventh Amendment immunity in light of analysis set out in *Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985)), *on remand*, 871 F.Supp. 344 (W.D.Mo.1994) (granting summary judgment to University on basis that University was a state instrumentality under *Greenwood*, given state's continuous oversight, dependence on state funding and fact that any judgment payable would come from state treasury.) Moreover, it is well established in that the University is not a person within the meaning of Section 1983. *Regents of the University of Minnesota v. NCAA*, 560 F.2d 352, 362 (8th Cir.1977).

Thus, plaintiff's action, insofar as it seeks relief from the University or money damages from Chancellor Ianni in his official capacity, may not be maintained. Plaintiffs may, of course, pursue prospective injunctive relief from Chancellor Ianni in his official capacity. *Will*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10; *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

Plaintiff also purports to seek monetary relief from Chancellor Ianni in his individual capacity.[2] *Hafer v. Melo*, 502 U.S. 21, 25,

---

**2.** Plaintiff's Complaint names Chancellor Ianni as a defendant only as "Chancellor of the University of Minnesota at Duluth". In their moving papers, however, they assert that they intend to

amend their pleadings in order to name Ianni as a defendant in his individual capacity. Such motion was made during the pendency of this motion and granted by Order of Magistrate

**400**

112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). Defendant asserts that he is entitled to qualified immunity from liability in money damages in his individual capacity because his actions did not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, the question before the court is whether the rights protected under the First Amendment which plaintiffs seek to vindicate in this suit are 'clearly established'.

■ Whether a legally protected interest is 'clearly established' turns on "the objective legal reasonableness of an officials acts". *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738. "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate ... But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by actions taken 'with independence and without fear of consequences'." *Id.,* quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

Ianni interposes *Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) for the proposition that the First Amendment right alleged to have been violated was unclear because "the government as employer has far broader powers than does the government as sovereign." While that may be true, defendant's reliance on *Waters* is misplaced.

*Waters* was an employment termination case where the basis of the termination was certain speech, the content of which was disputed. In *Waters,* issue before the court was whether and under what circumstances, the speech of a public employee, which was potentially disruptive to the efficient delivery of services, could serve as the basis of adverse employment action; "... [w]hen an employee counsels her coworkers to do their job in a way with which the public employer

disagrees, her managers may tell her to stop, rather than relying on counter-speech." *Id.,* 114 S.Ct. at 1886. This is not an employment case where there is a threatened disruption to the efficient delivery of services; this is a censorship case, involving the removal of two photographs because the ideas purportedly conveyed in those photographs was offensive or, perhaps, threatening to others. That two of the plaintiffs are public employees is beside the point.

The gravamen of the complaint is not whether the photographs were the basis for adverse employment action; rather, the gravamen of the complaint is whether the ideas conveyed in the photographs fall within any of the exceptions to the general rule "that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of the hearers." *Street v. New York,* 394 U.S. 576, 592, 89 S.Ct. 1354, 1365, 22 L.Ed.2d 572 (1969). As such, *Waters* has no application to this case.

In order to resolve the question before it, having clarified the issue, the court must determine what Chancellor Ianni believed himself to be doing when he ordered the photographs removed. The only relevant question in the determination of whether Ianni is entitled to qualified immunity is whether, objectively viewed, the public official would have believed that his acts violated clearly established law. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Dunn v. Carroll,* 40 F.3d 287 (8th Cir.1994).

■ On the facts of this case, the court finds, without hesitation, that "[t]he contours of the right [were] sufficiently clear [so] that a reasonable official would understand that what he [did] violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Ianni asserts that his actions were taken with the intent to "maintain a positive and efficient working and learning environment conducive to the mission of an academic institution."

Judge J. Earl Cudd, dated August 3, 1994 (Clerk Docket No. 25). Therefore, the defendant University is no longer on the caption. The court, however, has no knowledge that the University has formally been dismissed from this action.

Therefore, as the discussion of the merits indicates, the action cannot be maintained as against the University and will be dismissed, leaving only the questions raised as to defendant Ianni in both his official and personal capacities.

Ianni Aff. at ¶ 11. Chancellor Ianni is, presumably, an educated and erudite person. It is inconceivable to this court that the Chancellor of a major University could have failed to know that First Amendment forbade, except in the narrowest of circumstances, the type of conduct at issue here. Aff. of Burnham at ¶ 8; Aff. of Morris at ¶ 3; see generally, Ronald D. Rotunda & John E. Noway, *Treatise on Constitutional Law: Substance and Procedure, 2d* §§ 20.1, 20.47 ("A content based restriction ... will only be upheld if the Court can find that it fits within a category of speech unprotected by the first amendment.")

Accordingly, the court denies the motion of defendant to dismiss insofar as that motion is based on the application of qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (qualified immunity does not protect those who knowingly violate the law.)

### 2. Standing

Defendant next seeks to dismiss this matter because plaintiff's lack standing. This argument is based on defendant's assertions that because the photographs were displayed for over one month, there is no injury. Moreover, defendant asserts that the exhibition of the photographs during an anti censorship exhibition without interference from the University negates the injury. Finally, defendant argues that because plaintiff Burnham removed the exhibit, there is no causal connection between the censorship and injury.

■ In order to maintain an action in federal court, all plaintiffs must establish they meet the standing requirements of Article III of the United States Constitution. This is a threshold question in every federal case, which determines whether a federal court has the power to hear the suit. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In order to establish standing, a plaintiff must make a three part showing: (1) plaintiff must have sustained an injury in fact, i.e. an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) there

must be a causal connection between that injury and the complained-of conduct; and (3) it must be likely—as opposed to merely speculative—that the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted).

■ Plaintiffs have alleged, to the satisfaction of the court, that there was injury. First Amendment rights are legally protected interests. Plaintiffs Burnham and Marchese point to damage to their respective professional reputations as a result of this controversy. Aff. of Marchese at ¶ 13; Aff. of Burnham at ¶ 16. The causal connection between the injury and the complained of conduct is not broken because Burnham removed the exhibit; Burnham removed the exhibit only after the "offending" photographs had been removed. The injury was received at the time the act of censorship was complete. Defendant has presented no evidence that the incident will not be repeated; defendant's reliance on the representation that if the exhibit were to be replaced, it wouldn't be taken down is, at best, disingenuous.

■ Plaintiff's argument is based on a second showing of the photographs which was an incident to a student exhibition concerning *censorship;* the photographs here at issue and the incidents surrounding their removal was used by the students as a teaching tool, an object lesson in what was not permitted under the First Amendment. That exhibit had nothing to do with the administration's inclination to repeat this incident. There is no showing by defendant that a repetition of this incident is impossible.

■ Finally, defendant asserts that the Kohn plaintiffs do not have standing because the photographs were not their speech. The Kohn plaintiffs conceived of the display, arranged it and exhibited it; they did not, however, choose how to portray Marchese and Burnham. The court finds that the Kohn plaintiffs have standing because they too were censored when the photographs of Burnham and Marchese, which were an integral part of the exhibit, were removed.

### 3. Mootness

■ "[A] federal court has no authority to give opinions of moot questions or abstract principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States,* 506 U.S. 9, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992). A case is moot "when the issues are no longer 'live' or the parties lack a legally cognizable interest in the out come. Where one of several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack,* 395 U.S. 486, 496–97, 89 S.Ct. 1944, 1950–52, 23 L.Ed.2d 491 (1969). Voluntary compliance by a party does not normally render a case moot. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). The case, however, may become moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." *Id.* This rule does not, however, obtain when "resumption of the challenged conduct ... depend[s] solely on the defendants capricious actions by which they are 'free to return to [their] old ways'." *Allen v. Likins,* 517 F.2d 532, 535 (8th Cir. 1975). The burden of proof as to the possibility that defendant will not at the wrong complained of is heavy and rests upon the defendant. *W.T. Grant,* 345 U.S. at 634, 73 S.Ct. at 898.

■ Defendant frames his argument on mootness in terms of plaintiff's prayer for injunctive relief. He asserts that, because there is no ongoing governmental activity, there is nothing for the court to enjoin. Further, defendant asserts that there is no reasonable expectation that this matter will recur. Finally, defendant argues that the Kohn plaintiffs' claims are moot because they have graduated from the University and, hence, will no longer be members of the History Club.

The court is mindful that as long as one of the parties retains "cognizable interest in the action" the case is not moot. *McCormack,* 395 U.S. at 496–97, 89 S.Ct. at 1950–52. Professors Marchese and Burnham remain on the faculty and plainly retain an interest in the resolution of the entire action. That

the plaintiffs Kohn have graduated merely resolves their interests in the requested injunctive and declaratory relief, *Nomi v. Regents of the University of Minnesota,* 5 F.3d 332, 334 (8th Cir.1993); they retain their respective interests in their claims for money damages.

Accordingly, the court finds that this matter is not moot and, therefore, declines to dismiss it on grounds of mootness.

### C. First Amendment Issues

Defendant asserts that there was no violation of the free speech rights of the plaintiffs here because the display case in which the display appeared was a nonpublic forum. Moreover, defendant contends that his removal of the offending photographs was permissible because it was a reasonable restriction on plaintiffs exercise of their rights under the First Amendment. The court disagrees with defendant.

### 1. Public Fora

The threshold question here is whether the display case, located on the property of the University and whose access is controlled by the University, is a public forum. In *Perry Educ. Assn v. Perry Local Educators Assn.,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Supreme Court set out three categories of public fora and outlined the types of regulations which are permitted to be imposed. The first, streets, parks and the like, the state may only "enforce a content based exclusion" when it can be shown that the regulation is "necessary to serve a compelling state interest." *Id.* at 45, 103 S.Ct. at 955.

The second category consists of public property which the State has opened for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1983) (university meeting facilities) ... Reasonable time, place and manner regulations are permissible, and a content based prohibition must be narrowly drawn to effectuate a compelling state interest.

*Perry,* 460 U.S. at 45–46, 103 S.Ct. at 954–56. That does not conclude the court's inquiry, however. This court recognizes "that the First Amendment does not guarantee access to property simply because it owned or controlled by the government." *U.S. Postal Service v. Greenburgh Civic Assn.,* 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). That an instrumentality, owned and operated by the government, is used to convey ideas or public information is not sufficient to transform it into a public forum for First Amendment purposes:

> Were we [to so hold] *display cases* in public hospitals, libraries, office buildings, military compounds, *and other public facilities immediately would become Hyde Parks* open to every would-be pamphleteer and politician. This the Constitution does not require.

*Lehman v. City of Shaker Heights,* 418 U.S. 298, 304, 94 S.Ct. 2714, 2718, 41 L.Ed.2d 770 (1974) (Emphasis supplied.). This is equally true of universities. See *Widmar,* 454 U.S. at 268 n. 5, 102 S.Ct. at 273 n. 5 ("We have never held … that a campus must … grant free access to all of its grounds or buildings.").

▮▮ The touchstone of the analysis, then, concerns the power of the government to "preserve the property under its control for the use to which it was lawfully dedicated." *U.S. Postal Service,* 453 U.S. at 130, 101 S.Ct. at 2685, quoting *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976), quoting *Adderley v. Florida,* 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966). Defendant admits that the display case was under its control and that it allows members of the History Club to use it upon request and that it was dedicated to the use of the History Department for disseminating information about the department. The court therefore finds, in light of the purposes for which the bulletin board was created and to which it was put and the limited access to the display case, that display case was a nonpublic forum.

To this extent, this matter takes on the garb of a differential access issues present in *Perry* and *Cornelius v. NAACP Legal De-*

*fense & Ed. Fund,* 473 U.S. 788, 811, 105 S.Ct. 3439, 3453, 87 L.Ed.2d 567 (1985):

> Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.

*Perry,* 460 U.S. at 49, 103 S.Ct. at 957. More importantly, however, "[t]he existence of reasonable grounds for limiting access to a nonpublic forum .. will not save a regulation that is in reality a facade for viewpoint based discrimination." *Cornelius,* 473 U.S. at 811, 105 S.Ct. at 3453.

### 2. Reasonable Restrictions

▮▮ The defendant's decision to restrict access to a nonpublic forum need only be reasonable; "it need not be the most reasonable or the only reasonable limitation." *Cornelius,* 473 U.S. at 808, 105 S.Ct. at 3452. Reasonableness is to be assessed in light of the purpose of the forum and all the surrounding circumstances. *Id.* at 809, 105 S.Ct. at 3452.

▮▮ Defendant removed the pictures at issue here, it asserts, because "they displayed weapons" and "was a valid view-point neutral restriction based on its legitimate interest in addressing the fears of the targeted faculty members, in restoring harmony to the campus and the history department, and avoiding further disruption of university activities." Deft.'s Mem. in Supp. at 16. The defendant goes on to point out that the photographs were not supporting or opposing anything. Defendant's protestations that the removal of the offending photographs was content neutral is wholly without merit. Defendant fails to explain how the removal of only the photographs of Marchese and Burnham was content neutral in light of the fact that the only reason that they were removed is because the photographs were posed with weapons. Of the 11 or 12 photographs con-

tained in the exhibit, only the two exhibiting weapons were removed. Whether the photographs advocated anything is irrelevant in this context; on the contrary, it was the perception that the photographs somehow advocated support for those that had made the threats which motivated their removal. This is an impermissible content based restriction. *Cf. Police Department v. Mosley,* 408 U.S. 92, 92 S.Ct. at 2286.

 Implicit in the argument of defendant is that the threats against Vice–Chancellor Featherman and Professor Trolander which underlie the removal of the photographs were of sufficient gravity to justify this content based restriction. That some members of the faculty and administration were discomfited by the sight of photographs displaying weapons is insufficient to justify the removal of the photographs: "[o]ne must begin with the premise that government may not justify the suppression of speech because its content . . . is offensive to some members of the audience." Lawrence Tribe, *American Constitutional Law* (2d ed. 1988) 852; see also, *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) ("[U]ndifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression.").

Accordingly, defendants motion to dismiss because there was no violation of plaintiffs rights to free expression under the First Amendment is denied.

To reiterate, plaintiff's claims, and each of them will be dismissed as against the University of Minnesota; those claims may not be maintained under Section 1983 or the Eleventh Amendment. The claims of all plaintiffs for money damages as against Chancellor Ianni in his capacity as Chancellor of the University of Minnesota at Duluth will be dismissed as violative of the Eleventh Amendment. Plaintiffs, and each of them, may proceed against Chancellor Ianni in his individual capacity for money damages. The claims for injunctive relief of plaintiffs Michael Kohn and Louise Kohn, however, will be dismissed as moot. The claims for injunctive and declaratory relief asserted by plaintiffs Burnham and Marchese may proceed.

Finally, because the court reaches the decision that it does, defendant's motion with regard to dismissing claims arising under the state constitution is not reached. The court, in determining that there is jurisdiction based upon federal law and statute, has determined that the exercise of jurisdiction over plaintiff's state law claims is appropriate and the issues raised by defendant's motion need not be addressed.

### CONCLUSION

Based upon the foregoing and all the files, records and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment (Clerk Docket 6) is GRANTED in part and DENIED in part, as follows:

(a) All claims of all plaintiffs as to defendant University of Minnesota are DISMISSED WITH PREJUDICE;

(b) The claims of all plaintiffs as against defendant Lawrence Ianni as Chancellor of the University of Minnesota at Duluth are DISMISSED WITH PREJUDICE insofar as the complaint requests money damages;

(c) The claims of plaintiffs Michael Kohn and Louise Kohn as against defendant Lawrence Ianni as Chancellor of the University of Minnesota at Duluth are DISMISSED WITH PREJUDICE insofar the complaint requests injunctive relief; and,

(d) Defendant's motion is, in all other respects, DENIED.

2. Defendant's motion for summary judgment (Clerk Docket 27) is, in all respects, DENIED.