Alan THORNQUEST, Plaintiff,

v.

Maxwell KING, President of Brevard Community College; and Brevard Community College, Defendants.

No. 83–356–ORL–CIV–18.

United States District Court,
M.D. Florida,
Orlando Division.

July 25, 1985.

John J. Chamblee, Jr., Tampa, Fla., for plaintiff.

Jesse S. Hogg, Coral‑Gables, Fla., for defendants.

## OPINION AND ORDER

GEORGE KENDALL SHARP, District Judge.

This case is before the Court upon defendants' motion to dismiss for lack of subject matter jurisdiction and plaintiff's response thereto. The Court has also had the benefit of the supplemental memoranda and materials filed in response to the Court's request for additional information concerning the source of funds from which any judgment for plaintiff would be paid.

## STATEMENT OF FACTS

In this action under 42 U.S.C.A. § 1983 for declaratory and injunctive relief and damages, plaintiff alleges that defendants deprived him of his Fourteenth Amendment due process rights and his First Amendment rights of expression and association. The gravamen of plaintiff's complaint is that he was denied a continuing contract, i.e. tenure, by defendant Brevard Commu-

nity College (BCC) in retaliation for his involvement with a certified public employee organization.

Plaintiff, a Florida citizen, has been employed by defendant BCC since 1974, most recently as a guidance counselor. Defendant King is and was at the time plaintiff's claim arose in March, 1983, president of BCC, a community college organized under and governed by the laws of Florida. Defendant King has been sued only in his official capacity. Plaintiff was awarded tenure subsequent to the institution of this suit.

BCC receives its primary operating funds from the Florida legislature through the State Community College Fund (Fund). Fla.Stat. §§ 240.345(1), 240.347, 240.349. The legislature approves general appropriations for the Fund, and the State Board of Education determines the specific appropriations for BCC based upon a statutory formula which takes into account the level of enrollment and cost level of study. *See* Fla.Stat. § 240.359. BCC's sources of revenue are divided into three classifications: (1) General Current Fund, comprised of total student fees, total state support for operating costs and miscellaneous income; (2) Restricted Current Fund, comprised wholly of federal grants; and (3) Unexpended Plant Funding, which is state funding for construction funded solely by the state through the sale of state bonds. Fla. Const. Art. XII § 9(d)(3); Fla.Stat. §§ 240.-359(2), 240.359(3)(f). The federal grant money may only be expended in accordance with federal grant provisions; therefore, the Restricted Current Fund is not available to satisfy any judgment. Similarly, the state bond funding which comprises the Unexpended Plant Funding is not available because it is restricted to capital projects unless express authorization is given by the State Board of Education. Thus, the critical budgetary category for purposes of this motion is the General Current Fund. In the academic year 1984—1985, state support amounted to almost 76% of this fund. Student matriculation and tuition fees contributed just over 20% of the operating budget, and miscellaneous items such as interest income contributed almost 4% of the General Current Fund. All such operating budget funds, regardless of their source, are placed in a single depository by BCC pursuant to a rule promulgated by the BCC Board of Trustees.

In their motion to dismiss, defendants argue that all of plaintiff's claims against the college and its president except his claim for prospective equitable relief are barred by the Eleventh Amendment. Defendants seek to establish that BCC is an arm of the state, and thereby entitled to the Eleventh Amendment grant of sovereign immunity. Defendants claim that plaintiff's request for prospective equitable relief is moot since plaintiff was awarded tenure subsequent to the initiation of this suit. Defendants' motion presents the interesting and difficult question of whether Florida community colleges are arms of the state such that they are entitled to the protection of Eleventh Amendment immunity.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this § 1983 suit under 28 U.S.C. §§ 1331, 1343. Assertions of immunity under the Eleventh Amendment. deprive federal courts of jurisdiction over certain claims, and are regarded as in the nature of subject matter jurisdiction. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 n. 8, 104 S.Ct. 900, 907 n. 8, 79 L.Ed.2d 67, 77 n. 8 (1984). Thus, an Eleventh Amendment claim may be raised at any time, *id.*, Fed.R.Civ.P. 12(h)(3), and defendants' motion is timely.

The Eleventh Amendment provides:

[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens of Subject or any Foreign State.

Further, this amendment has consistently been construed as barring claims brought against a state in federal court by one of its own citizens. *Pennhurst State School*

& *Hospital v. Halderman,* 465 U.S. at 100, 104 S.Ct. at 908, 79 L.Ed.2d at 78. Under the Eleventh Amendment, states are immune from money damages in suits under 42 U.S.C.A. § 1983. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Eleventh Amendment immunity extends to states and state officials, but not to independent political entities such as counties or municipalities. *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d 730, 732 (11th Cir. 1984); *Fouche v. Jekyll Island State Park Authority,* 713 F.2d 1518, 1520 (11th Cir. 1983). Thus, the issue which the Court must determine is whether BCC is an "arm of the state" entitled to Eleventh Amendment immunity, or whether it is an independent political entity comparable to a city or county.

BCC's Eleventh Amendment status is a matter of federal law. *See, e.g., Hutchins v. Board of Trustees of Michigan State University,* 595 F.Supp. 862, 866 (W.D. Mich.1984). However, in making the determination of BCC's status, the Court must look to the state law creating and defining community colleges and to their character and functions. *See Brown v. East Central Health District,* 752 F.2d 615, 617 (11th Cir.1985); *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d at 732; *Fouche v. Jekyll Island State Park Authority,* 713 F.2d at 1520; *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir.1981). "Aspects of state law particularly relevant to this inquiry are: how state law defines the entity; what degree of control the state maintains over the entity; where funds for the entity are derived; and who is responsible for judgments against the entity." *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d at 732 (citations omitted). Although some courts of appeals regard who ultimately pays as the most crucial factor, a recent Eleventh Circuit decision indicates that this circuit gives special attention to how the entity is treated by the state courts. *Id.* However, in *Brown v. East Central Health District,* 752 F.2d at 617–618, an Eleventh Circuit panel in its explication of Eleventh Amendment analysis focused on fiscal considerations such as the source of the entity's funds and the entity's authority to issue bonds or levy taxes.

■ The issue of whether or not Florida community colleges are arms of the state entitled to Eleventh Amendment immunity has not been definitively addressed. However, the immunity issue has been decided with regard to other Florida educational entities. In *Byron v. University of Florida,* 403 F.Supp. 49, 51 (N.D.Fla.1975), the court indicated that the university was a political instrumentality of the State of Florida. Conversely, the former Fifth and Eleventh Circuits have compared county school boards to municipalities and concluded that county school boards are not the type of entities sheltered by the Eleventh Amendment. *Travelers Indemnity Company v. School Board of Dade County,* 666 F.2d 505, 507–509 (11th Cir.1982); *Campbell v. Gadsden County District School Board,* 534 F.2d 650, 655–656 (5th Cir.1976); *Adkins v. Duvall County School Board,* 511 F.2d 699, 693 (5th Cir. 1975). In determining that Florida county school boards are not immune under the Eleventh Amendment, the Fifth Circuit in *Gadsden* emphasized that awards against such entities are not barred "so long as the entities sued are locally controlled, essentially local in character, and the funds to defray the award would not be derived primarily from the state treasury." *Campbell v. Gadsden County District School Board,* 534 F.2d at 656 (citations omitted).

A review of the Florida statutes creating and governing the state university system, the community college system, and the district school system, *see Fla.Stat.* §§ 240.-301–240.379, convinces the Court that community colleges occupy an intermediate position between the state-oriented university system and the local county school boards in both function and legal status. Thus, the Court faces the difficult task of determining whether for Eleventh Amendment purposes community colleges are compara-

ble to state universities or to county school boards, counties and municipalities.

Three decisions of the Court of Appeals for the Fifth Circuit provide the Court with guidance in analyzing this particular Eleventh Amendment problem. In *Hander v. San Jacinto Junior College*, 519 F.2d 273 (5th Cir.1975), the former Fifth Circuit examined the powers, nature and characteristics of Texas junior colleges under Texas law and determined that these entities are "not alter egos of the state but are primarily local institutions created by local authority and supported largely by local revenues." *Id.* at 279. The Court in *Hander* noted that one Texas state law provision reserved all authority not vested in the coordinating board by statute in the local junior college districts. The *Hander* Court emphasized that under the statutory framework in question establishment of Texas junior colleges began with a local initiative petition to the county school board, followed by a determination by the state coordinating board that the junior college would benefit the state as well as the community. *Id.* The Court noted that a district-wide referendum was then held, at which time the district electorate selected the board of trustees. *Id.* The Court in *Hander* also noted that under the Texas statute junior colleges were authorized to issue revenue bonds and levy annual ad valorem taxes, and that by statute state appropriations were made in an amount sufficient to supplement local funds. *Id.* The Court concluded that Texas junior college districts are accorded the same legal status as independent school districts, and are not immune under the Eleventh Amendment. The *Hander* decision was followed in *Goss v. San Jacinto Junior College*, 588 F.2d 96, 98 (5th Cir.1979). In contrast, the Fifth Circuit in *Jagnandan v. Giles*, 538 F.2d 1166, 1172–1176 (5th Cir. 1976), held that claims against officials of Mississippi State University were barred by the Eleventh Amendment. In *Jagnandan*, the Court held that the university was immune because of state control over its finances and because state decisional law which treated the university as an arm of the state.

With this precedent in mind, the Court turns to the application of the four factors listed in *Tuveson* to Florida community colleges. *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d at 732. The first two *Tuveson* factors, how state law defines the entity and what degree of control the state maintains over the entity, involve many overlapping considerations and will be analyzed together. Although community colleges are legal entities defined by statute as political subdivisions of the state, Fla.Stat. §§ 240.313, 240.317, a review of the statutes creating, defining and governing Florida community colleges convinces the Court that they are not independent political entities of the type which fall outside the protection of the Eleventh Amendment.

Florida community colleges are defined separately from both public schools, i.e. kindergarten through secondary grades, and institutions of higher education, i.e. all state-supported educational institutions offering work above the public school level other than community colleges. Fla.Stat. § 228.041. The primary function of community colleges is to respond to community needs for postsecondary academic and vocational education. Fla.Stat. § 240.301(2). The State Community College System is operated by the State Board of Community Colleges, which is comprised of the Commissioner of Education, one student and 11 lay citizens appointed by the Governor, approved by four members of the State Board of Education and confirmed by the Senate. Fla.Stat. § 240.307. The State Board serves as director of the Division of Community Colleges of the Department of Education, Fla.Stat. § 240.311(1), and provides statewide leadership in overseeing and coordinating the colleges, although maximum local autonomy is preserved. Fla. Stat. § 240.305. Among its many supervisory duties, the State Board is required to advise community college presidents of the fiscal policies adopted by the legislature and their responsibilities to follow those policies, Fla.Stat. § 240.311(3)(e), and must

review and approve all budgets in the State Community College System. Fla.Stat. §§ 240.311(5)(a), 240.361. All community college funds must be accounted for and expended in accordance with the rules and regulations of the State Board of Education. Fla.Stat. § 240.363.

The individual community college districts are governed by a board of trustees. In contrast to the elected county school board members, Art. IX, § 4, Fla.Const.; Fla.Stat. §§ 230.04, 230.10, community college boards are appointed by the Governor, approved by four members of the State Board of Education, and confirmed by the Senate. Fla.Stat. § 240.313(3). One of the stated purposes in the title of the 1979 act which reorganized and consolidated the postsecondary education provisions of Florida law was to create community college Boards of Trustees and provide them with powers similar to university Boards of Trustees. Ch. 79–222, Laws of Fla. Each board is vested with the authority to operate the college in accordance with the rules of the State Board of Education and State Board of Community Colleges. Fla.Stat. § 240.319(1). State funding for community colleges is handled through the State Community College Program Fund, and is apportioned and distributed on the basis of a statutory formula and regulations of the State Board of Education. Fla.Stat. §§ 240.347, 240.359. Community colleges may not expend public funds to acquire additional property without the specific approval of the Legislature. Fla.Stat. § 240.-327(2).

As this survey of the Florida statutes reveals, community colleges are governed by a complex network of state statutes, rules, and regulations. Although local autonomy is preserved to the extent possible in order that community postsecondary academic needs may best be served, the governing body of community colleges is appointed, approved and confirmed by state officials and legislators, and has duties similar to those of the boards of trustees for universities. District boards are accountable, especially in fiscal matters, to the State Board of Community Colleges and the State Board of Education. Additionally, as discussed in detail below, the state legislature provides the primary source of funds for community colleges. In summary, although local interests are necessarily a major concern for community colleges, the state through both the executive and legislative branches exerts substantial control over community colleges, notably through selection of the governing officials, funding, and review of fiscal matters, and the state community college system advances the state-wide goal of enhancing postsecondary education.

If the Court were to view the issue of how state law defines the entity narrowly, the Eleventh Amendment might not cloak community colleges with immunity since the statute defines such college districts as political subdivisions. However, a review of the statutes creating and governing community colleges and the community college system in Florida shows that these colleges are not independent political entities comparable to municipalities, counties or district school boards. Community colleges, while they serve community needs, are not local in character in the same sense as district school boards. Unlike municipalities, counties and district school boards, community colleges are controlled by the state rather than the local electorate. Community colleges serve the state goals of making postsecondary education available to a greater number of people and of relieving part of the demands on the state university system for postsecondary education. Further, unlike municipalities, counties and school districts, community college districts do not have the power to issue bonds and levy taxes. Art. VII, § 9, 12, Fla.Const. Although students at community colleges presumably are primarily local residents, they are not limited to district residents. Finally, the statutory provision which required that junior or community colleges could be established only at the request of district school boards was repealed in 1979. See Ch. 79–222, § 121, Laws of Florida. As this survey of the Florida statutes shows, the factors which

persuaded the courts in *Gadsden* and *Hander* that district school boards and Texas junior colleges are not immune under the Eleventh Amendment do not apply in this case because of the differing statutory framework and goals which Florida has adopted for its community colleges.

A review of the changing status of Florida community colleges over the past two decades also persuades the Court that community colleges as currently organized are arms of the state. Under the 1967 statutes, Florida community colleges were established at the initiative of the county board, Fla.Stat. § 230.0101, and were a part of the county school system under the control of the county school board. Fla. Stat. § 230.0102 (1967). Each college had a president responsible to the county board through the county superintendent, Fla. Stat. § 230.0102, and a non-voting advisory committee to advise the county board on community college matters. Fla.Stat. § 230.0103. Each county operating a college was required to make efforts to contribute a statutorily apportioned amount to the state fund for community colleges. Fla.Stat. §§ 230.0111, 230.0117(7).

By 1971, the state legislature had removed community colleges from the supervision of the county boards and provided for community college districts and boards of trustees with independent corporate status to operate the colleges. Fla.Stat. § 230.753, 230.754 (1971). Further, the county was no longer required by statute to contribute to community college funding. Fla.Stat. §§ 230.761, 230.767. These changes are especially significant because removal of community colleges from county board control meant that the board operating the college no longer had authority to levy taxes or issue bonds. Establishment of new community colleges remained a matter limited to district school board initiative, Fla.Stat. § 230.752, and the provisions governing community colleges remained as part of the chapter governing and titled "The District School System." Fla.Stat. §§ 230.01–230.776.

In 1979, the legislature reorganized the Florida postsecondary education system, removing the sections covering community colleges from the district school system and consolidating the provisions governing state university and community college systems and other provisions in one chapter titled "Postsecondary Education." *See* Ch. 79–222, Laws of Fla.; Fla.Stat. §§ 240.105–240.603 (1983). In the 1979 act, the legislature enunciated the state-wide goals for the postsecondary education, Fla.Stat. § 240.-105, and also set forth the previously unspecified state mission and responsibilities of community colleges. Fla.Stat. § 240.-301. The section limiting establishment of new community colleges to the initiative of local school boards was repealed. Ch. 79–222, § 121, Laws of Fla.

In the 1979 act, the legislature specified that community colleges are political subdivisions of the state. Fla.Stat. § 240.317. The legislative history of the 1979 act is silent as to why this provision was amended. However, the Court's review of the evolution of Florida community colleges over the past twenty years leads to the conclusion that this section is a culmination of the legislature's gradual shift of primary control over community colleges from county to state authorities. Section 240.-317 appears to be an affirmation that community colleges are within the state heirarchy of postsecondary education rather than merely an extension of district school programs. From this review of Florida law, the Court concludes that community colleges are arms of the state comparable in Eleventh Amendment analysis to state universities rather than to district school boards, counties or municipalities.

In assessing whether or not particular entities are immune under the Eleventh Amendment, the Eleventh Circuit, at least according to the *Tuveson* Court, accords special weight to how the entity is treated by the state courts. Unfortunately, Florida case law gives little guidance to the Court in determining how state law regards the entity. In *Board of Public Instruction v. State Treasurer*, 231 So.2d 1, 4 (Fla.1970), the Court noted that communi-

ty colleges serve "a distinctly local function." However, as noted above, community colleges also serve important statewide postsecondary educational functions. The Supreme Court of Florida's comment in *Board of Public Instruction v. State Treasurer*, 231 So.2d at 4, merely serves to highlight the hybrid character and purpose of community colleges. Similarly, the fact that the state attorney general has indicated that community colleges are not state agencies for certain fiscal and administrative purposes does not preclude Eleventh Amendment immunity. *See* Atty.Gen.Op. 071–175 (June 30, 1971). This opinion was issued prior to reorganization and consolidation of the postsecondary education provisions of Florida law. Further, one of the primary reasons for determining that community colleges were not state agencies was the joint financial support by local school districts and the state. This rationale does not apply to BCC, which receives little, if any, local funding.

The third factor enumerated in *Tuveson* is where funds for the entity are derived. Under Florida law, community colleges have no authority to issue revenue bonds or levy taxes. This is a critical distinction between community colleges and district school boards. This fact also distinguishes Florida community colleges from the Texas junior colleges considered in *Hander*. As summarized in the statement of facts, 76% of BCC's operating budget is derived from state appropriations, while just over 20% is funded by student tuition and fees and 4% is derived from miscellaneous sources such as interest income. In *Travelers Indemnity Company v. School Board of Dade County*, 666 F.2d 505 (11th Cir.1982), the Eleventh Circuit commented that Eleventh Amendment immunity is available only if satisfaction of the judgment must under all circumstances be paid out of state funds. Plaintiff relies on this language in support of its argument that any judgment he obtained could be paid out of funds derived from student tuition and fees or miscellaneous income rather than from funds obtained through state appropriations. Thus,

plaintiff argues, his claims are not barred by the Eleventh Amendment.

However, a number of courts in this circuit and elsewhere have held that entities which received less than 100% state funding are immune under the Eleventh Amendment. In *Gadsden*, the Fifth Circuit wrote in terms of an award from funds derived *primarily* from the state treasury, and in *Jagnandan* the university was held immune from refund payments in a suit to recover tuition fees even though state appropriations comprised no more than 72% of its budget. *Campbell v. Gadsden County District School Board*, 534 F.2d at 655–656; *Jagnandan v. Giles*, 538 F.2d at 1175–1176. Similarly, in *Hall v. Medical College of Ohio*, 742 F.2d 299, 304–305 (6th Cir.1984), the Sixth Circuit indicated that where appropriated funds were gauged to the amount of self-generated funds, the link between unsegregated appropriated and non-appropriated funds renders any judgment against the school a liability payable from the state treasury. In *Hutchins v. Board of Trustees of Michigan State University*, 595 F.Supp. at 865, the Eleventh Amendment barred a damages award even though state appropriations accounted for only 36% of Michigan State University's total funds.

Finally, the Court concludes that the reasoning of the Eleventh Circuit in *Fouche v. Jekyll Island State Park Authority*, 713 F.2d at 1521, which involved a similar issue, settles the issue of partial state funding in defendants' favor. In *Fouche*, an Eleventh Circuit panel held that a Georgia state park authority was immune under the Eleventh Amendment despite evidence that in prior years the authority was self-supporting and received no appropriated state funds. *Id.* The *Fouche* Court indicated that recovery in the action would be from state funds because the state would be responsible for any of the authority's debts which could not be paid out of its revenues. Thus, the fact that BCC's revenues are not derived solely from the state does not preclude Eleventh Amendment immunity. The amount of state appropriated funds available to BCC under the Board of Edu-

cation formula depends in part upon resources available from student fees and tuition. Thus, a reduction in student generated funds would require an increase in state funding. Because the net effect of a judgment paid out of student generated fees would be to require increased appropriations to BCC from the state through the State Community College Program Fund, the Eleventh Amendment bar to interference with the state's fiscal autonomy would apply. *See, e.g., United Carolina Bank v. Board of Regents,* 665 F.2d 553, 560 (5th Cir. Unit A 1982) (relying upon *Jagnandan v. Giles,* 538 F.2d at 1176).

The final factor before the Court is who is responsible for judgments against the entity. Because community college districts and their boards are separate legal entities which may make contracts, sue and be sued, Fla.Stat. §§ 240.313(1), 240.-319(3)(c), it appears that judgment could validly be entered against BCC. However, the fact that community colleges are corporate entities which may sue and be sued does not preclude a finding that they are arms of the state. *See Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d at 732. Community colleges are authorized to be self-insured, to enter into risk-management programs, or to purchase insurance (or any combination thereof) to cover all losses and expenses incurred in defending civil actions against officers, employees or agents of the district board of trustees. Fla.Stat. § 240.375. However, the funds for self-insurance or insurance premiums would necessarily be derived in large part from state appropriated funds, and judgments against state risk management trust funds are regarded as judgments assumed by the state. *See Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d at 734. Thus, regardless of the choice of a community college as to self-insurance, insurance or risk management, the funds ultimately would be derived from the state treasury. Therefore, analysis of this factor indicates that Florida community colleges should be considered an arm of the state for Eleventh Amendment purposes.

Finally, the Eleventh Amendment bars recovery of money damages not only against an arm of the state, but also against officials of such entities sued in their official capacity. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. at 101 and n. 11, 104 S.Ct. at 908 and n. 11, 79 L.Ed.2d at 79 and n. 11; *Glover v. Alabama Department of Corrections,* 734 F.2d 691, 695 (11th Cir.1984); *Williams v. Bennett,* 689 F.2d 1370, 1374, 1376, 1378 (11th Cir.1982). In plaintiff's complaint, defendant King is sued as president of BCC. Thus, plaintiff's damages claims against defendant King also are barred by the Eleventh Amendment because he is sued only in his official capacity. Plaintiff's damages claims are barred by the Eleventh Amendment, and his claims for prospective injunctive relief are rendered moot by BCC's subsequent grant of tenure. Therefore, it is

ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED; plaintiff's complaint is DISMISSED without prejudice to the right of plaintiff to seek to raise his claims in a court of competent jurisdiction.