_____

No. 94-3703
_____

Les Hadley,                        *
                                   *
     Plaintiff - Appellee,         *
                                   *   Appeal from the United States
     v.                            *   District Court for the
                                   *   Western District of Arkansas.
North Arkansas Community           *
Technical College,                 *
                                   *
     Defendant - Appellant.        *

_____

               Submitted:   September 11, 1995

               Filed:   February 14, 1996
_____

Before LOKEN and LAY, Circuit Judges, and NANGLE,[*] District Judge.


LOKEN, Circuit Judge.


     Les Hadley filed this civil rights action under 42 U.S.C. §
1983 alleging that his former employer, North Arkansas Community
Technical College ("NACTC"), violated his due process rights by
summarily terminating him as a vocational instructor.  NACTC moved
for summary judgment, claiming that it is an arm of the State
entitled to Eleventh Amendment immunity from this federal court
damage action.   The district court[1] denied the motion, and we
remanded for further consideration in light of Sherman v. Curators
of Univ. of Mo., 16 F.3d 860 (8th Cir. 1994), and Greenwood v.

_____

     *The HONORABLE JOHN F. NANGLE, United States District
     Judge for the Eastern District of Missouri, sitting by
     designation.

     [1] The HONORABLE H. FRANKLIN WATERS, Chief Judge, United States
District Court for the Western District of Arkansas.

Ross, 778 F.2d 448 (8th Cir. 1985). The court then concluded in a thorough opinion that NACTC is entitled to Eleventh Amendment immunity and dismissed Hadley's claim. Hadley appeals. We affirm.

## I.

The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action. See generally Edelman v. Jordan, 415 U.S. 651 (1974). Section 1983 does not override Eleventh Amendment immunity. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 63 (1989), construing Quern v. Jordan, 440 U.S. 332 (1979). Therefore, if NACTC is entitled to the State of Arkansas's Eleventh Amendment immunity, the district court properly dismissed Hadley's claim.

A state agency or official may invoke the State's Eleventh Amendment immunity if immunity will "protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123 n.34 (1984), quoting Lake Country Estates, Inc. v. Tahoe Reg. Planning Agency, 440 U.S. 391, 401 (1979); see Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 463-64 (1945). On the other hand, Eleventh Amendment immunity does not extend to independent political subdivisions created by the State, such as counties and cities. See Lincoln County v. Luning, 133 U.S. 529 (1890). The issue is whether NACTC "is to be treated as an arm of the State . . . or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (holding that Ohio local school districts are like political subdivisions and therefore not immune). State universities and

-2-

colleges almost always enjoy Eleventh Amendment immunity.[2]  On the other hand, community and technical colleges often have deep roots in a local community.  When those roots include local political and financial involvement, the resulting Eleventh Amendment immunity questions tend to be difficult and very fact specific.[3]

Eleventh Amendment immunity reflects respect for state sovereignty and a desire to protect the state treasury.  A narrow majority of the Supreme Court recently held that exposure of the state treasury is a more important factor than whether the State controls the entity in question.  Hess v. Port Auth. Trans-Hudson Corp., 115 S. Ct. 394 (1994).  We see nothing inconsistent with the majority's reasoning in Hess and the approach we have developed for deciding whether a particular institution of higher learning is entitled to Eleventh Amendment immunity.  In addition, Hess involved a bi-State compact entity, and the majority cautioned that "there is good reason not to amalgamate Compact Clause entities with agencies of 'one of the United States' for Eleventh Amendment purposes."  Id. at 402.  Therefore, we adhere to the test that we

---

[2]For cases involving Eighth Circuit institutions, see Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446-47 (8th Cir. 1995); Richmond v. Board of Regents of Univ. of Minn., 957 F.2d 595, 599 (8th Cir. 1992); Sherman v. Curators of Univ. of Mo., 871 F. Supp. 344, 345 (W.D. Mo. 1994); Van Pilsum v. Iowa State Univ. of Science and Tech., 863 F. Supp. 935, 937 (S.D. Iowa 1994); Assaad-Faltas v. University of Ark. for Medical Sciences, 708 F. Supp. 1026, 1030 (E.D. Ark. 1989), aff'd, 902 F.2d 1572 (8th Cir.), cert. denied, 498 U.S. 905 (1990).  A fact specific exception to the general rule is Kovats v. Rutgers, the State Univ., 822 F.2d 1303, 1307 (3d Cir. 1987).

[3]See, e.g., Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201-202 (9th Cir. 1988), cert. denied, 490 U.S. 1081 (1989); Goss v. San Jacinto Junior College, 588 F.2d 96, 98-99 (5th Cir.), modified on other grounds, 595 F.2d 1119 (5th Cir. 1979); Korgich v. Regents of New Mexico Sch. of Mines, 582 F.2d 549, 551 (10th Cir. 1978); Durrani v. Valdosta Technical Inst., 810 F. Supp. 301, 305 (M.D. Ga. 1992), aff'd, 3 F.3d 443 (11th Cir. 1993); Moche v. City Univ. of New York, 781 F. Supp. 160, 165-66 (E.D.N.Y. 1992), aff'd, 999 F.2d 538 (2nd Cir. 1993); Thornquest v. King, 626 F. Supp. 486, 488-89 (M.D. Fla. 1985).

instructed the district court to apply on remand, which requires that we

> examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state. Courts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury.

Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985), quoting Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982) (citations omitted in original).

## II.

Like the district court, we begin by examining "the nature of the entity created by state law."  Mt. Healthy, 429 U.S. at 280; see Seibert v. University of Okl. Health Sciences Ctr., 867 F.2d 591, 594-95 (10th Cir. 1989).  Amendment 52 to the Arkansas Constitution authorizes the General Assembly to establish community college districts.  The General Assembly has authorized the State Board of Higher Education to formulate criteria for establishing community colleges, and to certify proposed community college districts.  See Ark. Code Ann. §§ 6-61-505 to -510.  A district is created if a majority of the voters in the proposed district vote in favor of establishing the community college.  § 6-61-513.  Under a 1991 statute, technical colleges may "become part of the Arkansas technical and community college system under the coordination of the State Board of Higher Education."  § 6-53-301(a) (Supp. 1993).  That law prompted the 1992 merger of North Arkansas Community College and Twin Lakes Technical College into NACTC.

By statute, the State must provide community colleges "[f]unds for the general operation of an adequate comprehensive educational program."  Ark. Code Ann. § 6-61-601(a).  To this end:

-4-

The amount of state revenues to be recommended for the general operation of each community college shall be the difference between the recommended budget and the total of income for general operation, including student fees and any other income except local taxes. The recommended budget for general operation shall be sufficient to provide an adequate comprehensive educational program . . . as determined by the [State Board of Higher Education].

§ 6-61-601(c)(2). For purposes of state appropriation and expenditure procedures, the term "State agency" includes "state-supported institutions of higher learning . . . functioning under appropriation made by the General Assembly." § 19-4-801(1)(A). For the 1993-94 fiscal year, 58.2% of NACTC's total budget was provided by state funds appropriated by the General Assembly. Moreover, the state treasury is structured to include an NACTC Fund that is dedicated to the "maintenance, operation, and improvement" of NACTC. § 19-5-303(m) (Supp. 1993).

To this point, it seems clear that NACTC is, both financially and institutionally, an arm of the State, and that any damage award to Hadley would inevitably be paid from the state treasury. Those are the factors that led us to conclude in Dover Elevator, 64 F.3d at 446-47, that Arkansas State University is entitled to Eleventh Amendment immunity. But Arkansas community colleges also have elements of local funding and control that require further analysis.

The Arkansas Constitution permits community colleges to be partially funded at the local level:

The General Assembly shall prescribe the method of financing such community college and technical institutes, and may authorize the levy of a tax upon the taxable property in such districts for the acquisition, construction, reconstruction, repair, expansion, operation, and maintenance of facilities therefor.

Amendment 52, § 1.  The General Assembly has made local financial participation mandatory:

> (a) Each community college district shall be responsible for all capital outlay expenses[4] . . . except that the state may share the responsibility for capital outlay expenses for any community college which has an enrollment of at least one thousand (1,000) full-time equivalent students . . . .
>
> (b) Capital outlay expenses shall be paid from gifts, grants, profits from auxiliary enterprises, tuition, fees, local millages, and other local funds and may be paid from state funds appropriated for such purposes.

§ 6-61-603 (Supp. 1993).  Therefore, when the voters of Boone County, Arkansas, voted in 1973 to establish NACTC's community college district, they authorized the levy of a tax not to exceed five mills on taxable property in the district "for the purchase of land and for the construction and furnishing of buildings and facilities for such college."  That authority was extended indefinitely in a special election in 1977.  However, while local tax revenues have financed NACTC buildings and improvements, those funds are subject to most state accounting and budgetary procedures, § 19-4-803(b)(2); NACTC is a "State agency" for purposes of the Arkansas State Building Services Act, § 22-3-102(5); and the campus is State owned.

In fiscal 1993-1994, NACTC received $317,366 in local tax revenues, some three percent of its total budget.  Those funds were dedicated to new acquisitions or the issuance of bonds to finance new acquisitions.  See § 19-4-803(b)(2) (college must use funds from a millage levy "for the purposes stated on the ballot at the time of the election authorizing the millage"); Ark. Const. Art. 16, § 11 ("no moneys arising from a tax levied for one purpose

---

[4]Essentially, expenditures for land, buildings, and furniture and equipment.  See § 6-61-501(2).

shall be used for any other purpose").  Although the General Assembly has authorized community college districts to levy for general college operations "[i]n the event the local board of a community college wishes to spend larger sums of money than the state funds provided for general operation," § 6-61-602(a), *NACTC has never received any funds for general operations from local tax levies*.  In fiscal 1993-1994, NACTC's operating expense[5] revenues were 75.1% state appropriated funds, 22.1% tuition payments, and 2.8% federal grants and private donations.

In these circumstances, we conclude that Hadley's claim "is in reality a suit against the state," Sherman, 16 F.3d at 863, because "the funds to pay any award will be derived from the state treasury," Dover Elevator, 64 F.3d at 446.  Hadley argues that he seeks damages of less than $250,000 and therefore any award *could* be paid from other sources, such as future local tax increases, tuition, federal grants, or other discretionary funds.  However, while there is dictum in Sherman suggesting it is relevant "whether a judgment against the University can be paid from non-state funds under the University's discretionary control," 16 F.3d at 865 (emphasis added), traditional Eleventh Amendment cases did not require a speculative analysis of whether a college largely funded by the State might be able to pay a judgment in the first instance from other revenue sources, and Greenwood and Sherman were not departures from prior Eleventh Amendment jurisprudence.  See Treleven v. University of Minnesota, No. 95-2019, 1996 WL 11102, at *2 (8th Cir. Jan. 12, 1996).  Mt. Healthy directs us to examine "the nature of the entity," 429 U.S. at 280, not the nature of the relief the plaintiff seeks.

---

[5] "Operating expenses" include "funds devoted to or required for the regular or ordinary expense of the college, including administrative, maintenance, and salary expenses, but excluding capital outlay expenses, student activity expenses, and expense for intercollegiate athletics."  § 6-61-501(3) (Supp. 1993); see also § 6-53-103(9) (Supp. 1993).

-7-

Arkansas calls NACTC a state agency[6] and has made its daily operations financially dependent upon the state treasury. The district's never-exercised authority to supplement NACTC's operating budget with limited local tax revenues[7] does not change the fact that the State has created an institution of higher learning "that is dependent upon and functionally integrated with the state treasury." Kashani v. Purdue Univ., 813 F.2d 843, 846 (7th Cir.), cert. denied, 484 U.S. 846 (1987). The relevant funding inquiry cannot be whether NACTC enjoys some non-state funding, such as user fees (tuition), because then most state departments and agencies, and all state universities, would be denied Eleventh Amendment immunity.[8] Here, even if NACTC *could* initially satisfy a judgment from other operating revenues, such as tuition payments or federal grants, the judgment would produce a higher operating budget shortfall that must, by state law, be satisfied by an appropriation from the state treasury. Thus, Hadley's action "is in essence one for the recovery of money from the state." Ford Motor, 323 U.S. at 463-64.

---

[6]Arkansas has also characterized NACTC as a "state agency" in other governmental contexts. For example, the Department of Finance and Administration determined that community colleges are state agencies for purposes of exempting them from taxation, and the Attorney General determined that they are state agencies that qualify for grants from the Natural and Cultural Resources Grants and Trust Fund.

[7]The total local tax that may be levied for community college purposes is ten mills. § 6-61-503(a).

[8]Accord Lewis v. Midwestern State Univ., 837 F.2d 197, 199 (5th Cir.), cert. denied, 488 U.S. 849 (1988); Van Pilsum, 863 F. Supp. at 937-38. Conversely, the inquiry cannot end with the fact that the State appropriates funds for a community college, because then most local school districts would also be Eleventh Amendment immune. See Mt. Healthy, 429 U.S. at 280.

**III.**

Moving from the critical subject of state funding to the less important question of state control, we agree with the district court that there is substantial, but far from total, state control over NACTC. The State Board of Higher Education is comprised of thirteen members appointed by the governor and confirmed by the Senate. § 6-61-201(a)(1) (Supp. 1993). The State Board acting as the State Community College Board has broad powers and duties to guide and regulate community colleges. Ark. Code Ann. §§ 6-61-501(5) (Supp. 1993), 6-61-505. The College Panel of the State Board participates actively and widely in NACTC's day-to-day operation. For example, the College Panel establishes minimum qualifications for the college president, § 6-53-203(3) (Supp. 1993); evaluates NACTC budget requests, §§ 6-53-203(4) (Supp. 1993), 6-61-601; develops budget forms and determines that state funds are properly spent, §§ 6-53-203(5),(6) (Supp. 1993), 6-61-209; determines minimum tuition and fee levels, §§ 6-53-203(7) (Supp. 1993), 6-53-208 (Supp. 1993), 6-61-215; recommends establishing, expanding, or abolishing institutions, § 6-53-203(9) (Supp. 1993); and reviews curriculum proposals and changes, §§ 6-53-203(d) (Supp. 1993), 6-61-214 (Supp. 1993). The State Board also approved the merger of North Arkansas Community College and Twin Lakes Technical College into NACTC, the college's name change, and the its degree programs and courses.

However, the General Assembly has also granted substantial control over NACTC's daily affairs to locally-elected officials. NACTC has a Local Board of nine qualified electors of the community college district who are elected on a nonpartisan basis for six-year terms. § 6-61-520 (Supp. 1993). The Local Board, with the advice of the State Board, has broad power to select college officers; develop NACTC's education program; appoint a college president and fix the president's compensation and terms of office; appoint members of the administrative and teaching staffs and fix

their compensation and terms of employment; enter into contracts; accept grants and contributions; acquire, own, lease, use, and operate property; and exercise the right of eminent domain. § 6-61-521. Thus, as the district court noted, NACTC with its Local Board is significantly more autonomous than Arkansas state-wide universities. On the other hand, when it comes to finances -- the essence of the Eleventh Amendment inquiry -- the State Board's ultimate authority is ensured by its power to withhold state funding if NACTC fails to comply with "prescribed standards of administration or instruction." § 6-53-105 (Supp. 1993).

Read together, the provisions delimiting the responsibility of the State and Local Boards reveal a community college system that blends state and local interests and authorities. The local control is of course relevant but falls short, in our view, of making NACTC the Eleventh Amendment equivalent of a political subdivision. In the final analysis, while Eleventh Amendment immunity is a question of federal law, the structuring of state government is the province of the States. Nothing precludes a State from delivering regional or even local governmental services through an arm of the State, from permitting voters in an affected locale to help staff a state agency, or from providing highly structured local input to state agency decisionmaking.[9] Here, Arkansas calls NACTC a state agency, allows for substantial local autonomy but provides ultimate state control, and -- most importantly -- funds the agency's general operations primarily from the state treasury. We agree with the district court that NACTC is entitled to Eleventh Amendment immunity.

---

[9]For example, most local school districts do not enjoy Eleventh Amendment immunity because they are dependent on local taxes and controlled by local governmental entities, like cities and counties. However, California has chosen to structure its public education entities so that all have Eleventh Amendment immunity. See Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 251-52 (9th Cir. 1992), cert. denied, 113 S. Ct. 1280 (1993).

The judgment of the district court is affirmed.

LAY, Circuit Judge, dissenting.

Today's decision amplifies the disarray of approaches applied by lower courts when confronted with the defense of Eleventh Amendment immunity by state-created entities. Little would be served by setting forth the diverse reasoning of this Court or other courts. These cases are already of historical record.[1] My disagreement with the majority opinion is that it is not faithful to Supreme Court precedent or to this Court's rulings covering the same issue.

**Local Control**

On June 5, 1995, we remanded this case to make a complete record as to "'local autonomy and control and most importantly, whether the funds to pay any award will be derived from the state treasury.'" Hadley v. North Arkansas Community Technical College, No. 94-3703, 1995 WL 329591, at *1 (8th Cir. June 5, 1995) (per curiam) (quoting Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (quoting Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)); see Sherman v. Curators of Univ. of Mo., 16 F.3d 860, 863 (8th Cir. 1994)). Subsequent to our remand, the Supreme Court issued its ruling in Hess v. Port. Auth. Trans-Hudson Corp., 115 S.Ct. 394 (1994). As the Court therein observed, the issue of ultimate control cannot be the determining factor in Eleventh Amendment cases, "for the State may destroy or reshape any unit it creates." 115 S. Ct. at 404. The majority concedes that NACTC possesses a high level of local autonomy, but erroneously discounts

_____

[1]See Note, Clothing State Governmental Entities with Sovereign Immunity: Disarray in the Eleventh Amendment Arm-of-the State Doctrine, 92 Colum. L. Rev. 1243, 1291-96 (1992) (collecting cases).

-11-

this factor because the state legislature calls NACTC a "state agency" and "provides ultimate state control." Maj. Op. at 10.

I read the record much differently. In my judgment, the record reveals that NACTC resembles a local school district, albeit subject to state guidance, whose Local Board possesses broad authority to direct the college educational program and apply the college's resources to that end. The Local Board has broad power over the direction of NACTC's educational program. Specifically, the Local Board is empowered, inter alia, to: (1) select its officers; (2) develop, with the advice of the State Board, the educational program; (3) appoint, with the advice of the State Board, a president and fix the compensation and terms of office of the president who shall be the executive officer of the college's Local Board; (4) appoint, upon nomination of the president, members of the administrative and teaching staffs and fix their compensation and terms of employment; (5) enter into contracts; (6) accept grants or contributions of money to be used for any of its purposes; (7) acquire, own, lease, use, operate and dispose of property; (8) exercise the right of eminent domain; (9) make rules and regulations to govern the college's administration and operation; and (10) exercise all other necessary powers to operate the college. Ark. Code Ann. § 6-61-521 (1987).

Thus, viewed in light of the authority of the Local Board, the State Board's role is more appropriately characterized as that of an advisor, rather than that of a regulator. As the district court acknowledged, for example, NACTC is significantly more autonomous than Arkansas's universities. Dist. Ct. Op. at 19. NACTC has the power to tax, to acquire, use, and own property in the college's name, and to govern itself locally.

Stated differently, I find merit in Hadley's contentions that the State Board's supervision of NACTC is not appreciably different from that it exercises over local school boards. Although the

-12-

state approves NACTC decisions with respect to educational policy, many if not most of them are initiated at the local level. For example, while the consolidation of North Arkansas Community College and Twin Lakes Technical College was subject to state approval, NACTC's Local Board, and not the General Assembly or the State Board, initiated that decision. The same is true of the college's curricular decisions. Thus, although state law governs several <u>administrative</u> aspects of the college's operations, <u>substantive</u> judgments concerning NACTC's educational policy are made locally. In sum, a thorough analysis of NACTC's local control supports the conclusion that NACTC may not invoke the Eleventh Amendment's protection.

**NACTC's Financial Relationship with the State of Arkansas**

The Supreme Court observed in <u>Hess</u>, however, that control cannot be dispositive since it does not "hone in on the impetus for the Eleventh Amendment: the prevention of federal court judgments that must be paid out of a state's treasury." 115 S. Ct. at 404. Rather, the "core concern" in Eleventh Amendment analysis is whether a judgment against NACTC must be satisfied from the state treasury. <u>Id.</u> at 406.

The means by which NACTC acquires funding is established by Arkansas constitutional and statutory law. Amendment Fifty-two to the Arkansas Constitution empowers the General Assembly to establish districts to furnish community college instruction and technical training.[2] Ark. Const. amend. 52. Specifically,

_____

[2]Arkansas statutory law thus defines community college:

an educational institution established or to be established by one (1) or more counties or cities of this state offering a comprehensive program designed to serve the postsecondary educational needs of its district and the state including specifically, but without limitation, occupational programs of varying types and levels of

-13-

Amendment Fifty-two provides that "[t]he General Assembly shall prescribe the method of financing such community college and technical institutes, and may authorize the levy of a tax upon the taxable property in such districts for the acquisition, construction, reconstruction, repair, expansion, operation, and maintenance of facilities therefor." Id., § 1. The Amendment also provides, however, that no such district shall be created and no tax levied without the approval of a majority of the qualified voters in the proposed district. Id., § 2. Thus, the creation of a community college district is a joint venture between the state of Arkansas and the local community.

The Arkansas General Assembly has fulfilled its constitutional mandate by legislating that "[f]unds for the general operation of an adequate comprehensive educational program shall be provided by the state." Ark. Code Ann. § 6-61-601(a) (1987). In the event the college wishes to spend larger sums of money, it may raise additional "general operation" monies by levying millage. § 6-61-602(a). Local millage is subject to approval by the local electorate, § 6-61-601(b), is limited to ten mills on the taxable real and personal property in the district, § 6-61-517(b), and is a continuing levy to be collected by county authorities in the manner provided by law, § 6-61-517.

NACTC has far greater discretion in its management of monies received from nonstate sources. Bequests, gifts, and donations are exempted from state accounting and budgetary procedures, § 19-4-803, as are monies received from millage levied by the local district, § 19-4-803(b)(1-2). NACTC may not use millage revenues,

_____

difficulty, the first two (2) years of a baccalaureate degree, community service offerings, and student guidance and counseling services . . . .

Ark. Code Ann. § 6-61-501(1) (Supp. 1993).

-14-

however, for purposes other than those stated on the ballot.  Dist. Ct. Op. at 20-21.[3]

As I read the majority opinion, it adopts an "impact" rule, which apparently reasons that, since the school's general operations are funded primarily by the state, any judgment paid by NACTC "would produce a higher operating budget shortfall that must, by state law, be satisfied by an appropriation from the state treasury."[4]  Maj. Op. at 8.

I respectfully must disagree with this reasoning.  On the record presented here, it is clear that NACTC has independent discretionary power to raise funds for educational purposes and

---

[3]NACTC has submitted the issue of funding to the local electorate on two occasions.  In 1973, area voters passed a ballot ("the 1973 ballot") authorizing the creation of the community college district and the levy of a tax on the assessed value of taxable property therein.  The 1973 ballot authorized a tax not to exceed five mills on the dollar "for the issuance of bonds to provide all or part of the funds for the purchase of land and for the construction and furnishing of buildings and facilities for such college."  Dist. Ct. Op. at 11 (quoting the 1973 ballot).  In 1977, area voters passed a second ballot ("the 1977 ballot") which extended the bonding authority of the district and reauthorized the tax.  By its terms, the 1977 ballot authorized the issuance of bonds "for the purpose of liquidating the District's presently outstanding bonded indebtedness (incurred to finance construction and furnishing of buildings and facilities for the College) and the purpose of providing all or part of the funds for the construction and furnishing of additional buildings and facilities for the college."  Id. (quoting the 1977 ballot).

[4]The majority's reliance upon Dover Elevator Co. v. Arkansas State University, 64 F.3d 442 (8th Cir. 1995), is misplaced.  In Dover, the University had no discretionary power independently to raise revenue, as NACTC has.  The record in Dover revealed that Arkansas State University could not "'spend one penny without appropriation to do so from the general assembly.'"  Id. at 447 (quoting undisputed testimony in the record); see also id. ("because any award against ASU must be appropriated by the state assembly from money under state control, . . . the district court did not err in finding that ASU shares in the state's Eleventh Amendment immunity" (emphasis added)).

-15-

payment of money judgments. As the Court in Hess stated: "If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is 'no'--both legally and practically--then the Eleventh Amendment's core concern is not implicated." 115 S. Ct. at 406.

The record in this case reveals that the state is not required, legally or practically, to indemnify NACTC for debts incurred as a result of locally generated bond revenues. Arkansas law states quite the opposite: "The bonds shall be revenue bonds secured solely by the revenues pledged thereto, and in no event shall they be considered a debt for which the faith and credit of the State of Arkansas or any of its revenues are pledged." Ark. Code Ann. § 6-61-1009 (Michie Supp. 1993). Thus, it is clear the Eleventh Amendment's dominant concern is not implicated.

Moreover, although the district court found that local tax funds amount to an insignificant percentage of NACTC's overall budget, Hadley is correct in asserting that NACTC might authorize an additional levy of up to ten mills, ear-marking it for provision of general operating funds. Dist. Ct. Op. at 11-12. Thus, it is not the case that an award of backpay or nominal damages, assuming Hadley were to prevail, "would necessarily implicate the state fisc." Sherman, 16 F.3d at 864. I find this factor significant. The power to levy taxes is not, as NACTC suggests, merely incidental, but rather suggests the college is not exclusively dependent upon the state.

Alternatively, Hadley suggests that NACTC has other sources of discretionary funding, such as tuition, federal grants, private donations, and "other" monies, from which a judgment against him could be paid. NACTC correctly replies that, like funds from local millage, these funds may only be used for specific, limited purposes. Tuition monies, for example, are dedicated to the

-16-

payment of "educational" expenses.  Dist. Ct. Op. at 12.  But the fact that these monies are dedicated solely to "educational" expenses does not necessitate the conclusion that an award of back-pay to an instructor is not such an expense.  Hadley suggests, quite persuasively, that the payment of an instructor's salary constitutes "the quintessential educational expense," Supp. Br. for Appellee at 10, and asserts that the reduction of these expenses to the form of a judgment does not render them non-educational, id. I agree.  Although the district court concluded otherwise, I find no expressed rationale supporting that conclusion.  The monies involved here, if damages were to be awarded, constitute back salary for an instructor.  These are clearly educational expenses. Although NACTC receives the majority of its funding from the state, a judgment in Hadley's favor need not implicate the state treasury. The college may levy additional millage or apply tuition monies designated "educational" to satisfy the award.

In addition, the majority opinion is not faithful to the unanimous Court's rationale in Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).  In Mt. Healthy, the Supreme Court passed on the Eleventh Amendment defense proffered by a local school board in the State of Ohio.  In holding that the board was akin to a political subdivision to which the Eleventh Amendment does not extend, the Court stated:

> [The board] is subject to some guidance from the State
> Board of Education, and receives a significant amount of
> money from the State.  But local school boards have
> extensive powers to issue bonds, and to levy taxes within
> certain restrictions of state law.  On balance, the
> record before us indicates that a local school board such
> as petitioner is more like a county or city than it is
> like an arm of the State.  We therefore hold that it was
> not entitled to assert any Eleventh Amendment immunity
> from suit in the federal courts.

429 U.S. at 280-81 (Rehnquist, J.) (citations omitted).

-17-

A searching inquiry of the record reveals that NACTC enjoys independence, financially and otherwise, such that, notwithstanding its state's funding, it should be treated as an entity much like any other political subdivision or local school board.  Moreover, upon analysis of the overall record, any judgment against NACTC will not be paid from the state treasury.

In summary, the majority's holding allows NACTC to enjoy the benefits of local tuition monies and local property assessments without sharing in the costs and responsibilities that attend the power to generate such funds.  NACTC must take the bitter with the sweet.  As we observed in <u>Sherman</u>:

> [A governmental entity] cannot create its own eleventh amendment immunity by structuring its resources so as to pay all breach of contract damages out of state funds. Thus, the question on remand is not whether the [entity] <u>chooses</u> to pay contract damages out of state funds, but whether a judgment against the [entity] <u>can be paid</u> from non-state funds under [its] discretionary control.

16 F.3d at 864-65 (emphasis added).

The majority seeks to avoid our holding in <u>Sherman</u> by indicating that it is dicta.  This is puzzling to me since the portion quoted in the text is the precise holding of the case. If the test of <u>Sherman</u> is to be applied, then the majority is clearly in error.  There is no evidence in the present case that any judgement here <u>must necessarily</u> be paid from state funds.  The state may be obligated to fund the college, but that is not the criterion that determines whether a federal court judgment obligates the state treasury.

I respectfully dissent.

A true copy.

Attest:

     CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.